UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RACHEL SPECTOR, | : |
|         Plaintiff, | : |
| v. | :   No.   3:02cv861 (MRK) |
| TRANS UNION LLC<br>FIRST USA BANK, N.A. | : |
|         Defendant. | : |

## RULING ON PENDING MOTIONS

In this case, plaintiff Rachel Spector sues defendant Trans Union LLC for violating various federal and state statutes in connection with certain alleged errors in her credit report. Trans Union and Ms. Spector have each moved for summary judgment, and each has submitted affidavits, evidence and Local Rule 56(a) statements in support of their respective motions.[1] For

---

[1] The relevant submissions consist of: Complaint [doc. #1] ("Compl."); Trans Union LLC's Motion for Summary Judgment [doc. #63]; Trans Union LLC's Memorandum of Law in Support of Motion for Summary Judgment [doc. #64] ("Def.'s Mem. Supp. Mot. for Sum. J."); Trans Union LLC's Local Rule 9(C)1 Statement [doc. #65] ("Def.'s 9(C)1"); Plaintiff's Opposition to Trans Union Motion for Summary Judgment [doc. #78] ("Pl.'s Opp'n Mot. for Sum. J."); Plaintiff's Local Rule 56(a) Statement [doc. #79] ("Pl.'s 56(a)"); Rachel Spector's Affidavit in Opposition to Summary Judgment [doc. #80]; Trans Union LLC's Reply to Plaintiffs' Memorandum in Opposition to Trans Union's Motion for Summary Judgment [doc. #87]; Plaintiff's Supplement to Opposition to Trans Union's Motion for Summary Judgment [doc. #117]; Plaintiff's Motion for Partial Summary Judgment [doc. #66]; Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment [doc. #67] (Pl.'s Mem. Sup. Mot. for Part. Sum. J."); Plaintiff's Local Rule 56(a) Statement [doc. #68] ("Pl.'s 56(a)"); Affidavits in Support of Plaintiff's Motion for Summary Judgment [doc. #69] ("Rachel Spector Affidavit," "William Spector Affidavit"); Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Supplement to Trans Union's Motion for Summary Judgment [doc. #82] ("Def.'s Mem. Opp'n Pl.'s Mot. for Sum. J."); Trans Union LLC's Local Rule 9(C)2 Statement [doc. #83]; Plaintiff's Reply in Support of Her Motion for Summary Judgment [doc. #84].

the reasons set forth below, the Court DENIES Ms. Spector's Motion for Partial Summary Judgment [doc. #66] and GRANTS in part and DENIES in part Trans Union's Motion for Summary Judgment [doc. ## 63, 88].

I.

This dispute arises from the following facts. In 2001, Trans Union reported a Wachovia credit card account on Ms. Spector's credit report with a notation "Chapter 7 Bankruptcy." Rachel Spector Affidavit [doc. #69], ¶ 5. Ms. Spector has never filed for Chapter 7, or any other type of, bankruptcy. *Id.* Instead, her husband filed for Chapter 7 bankruptcy in 2001. William Spector Affidavit [doc. #69], ¶ 2. The Wachovia account listed on Ms. Spector's credit report had been opened by Ms. Spector's husband in 1993. *Id.*, ¶ 4. Ms. Spector was merely an authorized user of the account, and as such had no contractual liability on the account. Pl.'s 56(a)1, ¶ 5. When Ms. Spector disputed the reference to the Chapter 7 bankruptcy, Trans Union removed the reference to the Wachovia account after investigating the matter. Rachel Spector Affidavit, ¶ 6. Trans Union did not delete the reference entirely from its system, but instead used a technique, which it calls "cloaking," to remove the reference. Def.'s 9(C)1, ¶¶ 8, 9.

Wachovia later sold its credit card accounts to First USA and apparently transferred to First USA the credit card account that had been the subject of the "Chapter 7 Bankruptcy" reference on Trans Union's credit report for Ms. Spector. *Id.*, ¶¶ 6,10. During some portion of 2002 (the precise time period is not apparent from the record), Trans Union reported a First USA account (bearing the same number as the former Wachovia account) on Ms. Spector's credit report with the notation: "Chapter 7 Bankruptcy." Pl.'s 56(a)1, ¶¶ 11,14. On March 4, 2002, Ms. Spector's lawyer wrote to Trans Union as follows: "You have a Wachovia Bank Card account

2

listed as included in Ch.7 bankruptcy. My client has not filed a Ch. 7 bankruptcy or any other type of bankruptcy. In addition, she has no contractual obligation on the account, so it should not be on her report at all. Please investigate and delete the trade line." Def.'s 9(C)1, Exhibit A-1.

Even though Ms. Spector's lawyer had referred to a Wachovia account, rather than a First USA account, on March 6, 2002, a Trans Union employee sent an Automated Consumer Dispute Verification ("ACDV") to First USA, relaying the claim of Ms. Spector's lawyer that the First USA account listed was her husband's account only, that Ms. Spector was merely an authorized user on that account and that she had never filed for bankruptcy. *Id.*, Exhibit A (Declaration of Eileen Little), ¶ 10. The ACDV requested First USA to verify the entry, *id.*, Exhibit A-3, and on March 7, 2002, First USA responded to Trans Union. *Id*. First USA's response recited Ms. Spector's complaint, stated "verified as reported," and further stated that the reference "Chapter 7 Bankruptcy" should be changed on Ms. Spector's credit report to "Included in Bankruptcy." *Id.* On March 19, 2002, Trans Union notified Ms. Spector that the results of its investigation was "verified, no change." See Attachments to Pl.'s 56(a)1. Trans Union did not make the change in Ms. Spector's credit report that First USA had noted; nor did Trans Union remove the reference to the "Chapter 7 Bankruptcy," as it had previously done when Ms. Spector had questioned the reporting of the same credit card account, albeit at that time a Wachovia account. *See id.*

On May 17, 2002, Ms. Spector filed this action against both Trans Union and First USA alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, the Consumer Credit Reports Act ("CCRA"), Conn. Gen. Stat. § 36a-695, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*, and the common law. Thereafter, Trans Union removed the

reference to the First USA account from Ms. Spector's credit report. Pl.'s 56(a)1, ¶ 34. On March 24, 2003, defendant First USA was terminated from the case following settlement with the plaintiff.

II.

Both Trans Union and Ms. Spector now move for summary judgment on Ms. Spector's FCRA claims. Having reviewed the party's submissions, the Court believes that there are genuine issues of material fact regarding Trans Union's liability under FCRA, and therefore, neither party is entitled to judgment as a matter of law on plaintiff's liability for violating FCRA.[2] Briefly stated, the Court's reasoning is as follows.

Ms. Spector alleges that Trans Union violated a number of provisions of the FCRA principally in the following respects: by failing to adopt and to follow reasonable procedures to ensure the maximum accuracy of the information set forth on her credit report, Compl. ¶ 29; by inaccurately listing a credit card account on her credit report as having been involved in a Chapter 7 bankruptcy, thereby falsely implying that she had been involved in a bankruptcy, *id.*, ¶¶ 25, 27; by falsely informing her that the information regarding the Wachovia account had been deleted from her Trans Union credit file when, in fact, it had only been "cloaked", Pl.'s 56a ¶ 18; by "reinserting" (under the name First USA) the erroneous "Chapter 7 Bankruptcy" reference that Trans Union had previously deleted (under the name Wachovia) from her credit report, *id.*, ¶ 24; by failing properly to reinvestigate the disputed Wachovia account that was later sold to First USA, *id.*, ¶ 30; and by making only a superficial and cursory investigation into the claims raised

---

[2] The standards for granting summary judgment are ably recited in *McMillan v. Experion*, 170 F.Supp. 2d 278, 282-83 (D. Conn. 2001), and the Court has applied those standards in considering the parties' motions in this case.

by Ms. Spector's lawyer in her March 4, 2002 letter.  Pl.'s Mem. Supp. Mot. for Part. Sum. J. at 7-11.  *See, e.g.,* 15 U.S.C. §§ 1681g(a), 1681e(b), 1681i(a)(6)(B).

Trans Union counters, in essence, as follows: that Ms. Spector's credit report was never erroneous because all knowledgeable users of her report would know that the reference to "Chapter 7 Bankruptcy" on her report did not mean that Ms. Spector herself had been involved in a bankruptcy but only that the particular credit card account listed had been involved in a bankruptcy, Def.'s Mem. Supp. Mot. for Sum. J. at 13-14; that Trans Union's practice of cloaking an account such as Ms. Spector's is a reasonable practice designed to ensure that Trans Union does not reinsert inaccurate information, Def.'s Mem. Opp'n Mot. for Sum. J. at 5-8; that "cloaking" is in fact the same thing as "deleting" so that Trans Union did not mislead Ms. Spector when it told her that Trans Union had deleted the Wachovia account from her credit report, *id.*; that Trans Union did not "reinsert" any inaccurate information on Ms. Spector's credit report because the First USA account was a different and separate entry from the previously removed Wachovia entry, *id.*; and that First USA verified the accuracy of Trans Union's credit report and therefore, Trans Union's reinvestigation was reasonable and proper and Trans Union was justified in not removing the entry from Ms. Spector's credit report.  Def.'s Mem. Supp. Mot. for Sum. J. at 5-6.

As should be apparent from the foregoing recitation, the issue of Trans Union's liability under FCRA is rife with factual and credibility disputes that only the trier of fact should resolve. *See, e.g, McMillan*, 170 F.Supp. 2d at 286; *McCauley v. Trans Union LLC*, 2003 WL 22845741 (S.D.N.Y. 2003); *Houston v. TRW Information Serv., Inc.*, 707 F.Supp. 689 (S.D.N.Y. 1989). Among others, the parties disagree about the following issues: whether the reference to the

"Chapter 7 Bankruptcy" on Ms. Spector's credit report was inaccurate, materially incomplete and/or misleading to knowledgeable users of credit reports in view of the location of the reference on Ms. Spector's credit report; whether Trans Union took reasonable precautions to ensure the accuracy of information on Ms. Spector's credit report in view of the fact, among others, that Trans Union was aware that Wachovia was transferring its credit card accounts to First USA and that information regarding the bankruptcy of Mr. Spector was available from the public record; whether the reference to the First USA account on Ms. Spector's credit report amounted to a "reinsertion" of the erroneous Wachovia information in view of the fact, among others, that the same account number was involved and Trans Union was aware of Wachovia's transfer of its accounts to First USA; whether it was reasonable of Trans Union to rely solely on First USA's statement "verified as reported," or whether Trans Union should have undertaken further steps to investigate the bankruptcy reference on Ms. Spector's credit report and the claims of her lawyer; and whether Trans Union was reasonable in failing to follow First USA's recommendation that Trans Union change the reference on Ms. Spector's credit report from "Chapter 7 Bankruptcy" to "Included in Bankruptcy."

Indeed, at oral argument, counsel for Trans Union effectively conceded that factual issues existed regarding the reasonableness of its conduct under FCRA.[3] For her part, counsel for Ms.

---

[3] In its briefing and at argument, Trans Union relied on the Second Circuit's decision in *Podell v. Citicorp Diner's Club*, 112 F.3d 98 (2d Cir. 1997) as establishing that Trans Union's reinvestigation "comported fully with the FCRA." However, for a number of reasons, *Podell* does not establish *as a matter of law* that Trans Union's conduct in this case complied with the FCRA. For example, it is undisputed that Trans Union did not change Ms. Spector's report as First USA recommended. Moreover, while Trans Union interprets First USA's response to Trans Union's ACDV as verifying Trans Union's credit report, that response could also be read as only verifying the report by Ms. Spector's lawyer that it was Ms. Spector's husband, not Ms. Spector, who was involved in the Chapter 7 bankruptcy. Finally, the First USA credit card account bore

Spector acknowledged that she was not aware of a single decision holding that a credit reporting agency had violated the FCRA as a matter of law. Because of the existence of numerous issues of material fact relating to Trans Union's conduct, the Court cannot grant summary judgment to either party on the FCRA claims.

At oral argument, Trans Union placed greater emphasis on the issue of causation than on any other issues relating to Trans Union's FCRA liability. Relying on *Casella v. Equifax Credit Info. Serv.*, 56 F.3d 469 (2d Cir. 1995), Trans Union asserted that proof that a potential creditor received Ms. Spector's allegedly erroneous credit consumer report and acted adversely to Ms. Spector are essential elements of a FCRA claim and that Ms. Spector failed to provide that proof. Def.'s Mem. Supp. Mot. for Sum. J. at 11. The Court acknowledges that Ms. Spector's proof of causation is substantially more limited than the proof she has submitted regarding Trans Union's conduct. Nonetheless, based upon the record presented to date and cognizant of the standard this Court must apply on summary judgment (*see* note 2, *supra*) the Court concludes that there are sufficiently disputed issues of fact regarding causation that Trans Union is not entitled to summary judgment.

Counsel for Ms. Spector represented at oral argument that Ms. Spector does not seek to recover economic damages and instead seeks recovery only of the alleged emotional harm and mental distress Ms. Spector sustained from knowing that the allegedly erroneous Trans Union report was available to potential creditors. Actual damages under FCRA "may include

---

the identical account number as the Wachovia account that Trans Union had previously agreed to delete, and Ms. Spector has alleged that Trans Union was, or should have been, aware that Wachovia was transferring all of its credit card accounts to First USA. None of these facts was present in *Podell*, and the Court cannot say that as a matter of law those factual differences are irrelevant.

humiliation and mental distress even in the absence of out-of-pocket expenses." *Casella*, 56 F.3d at 474. However, the Second Circuit in *Casella* also held that "[W]e do not believe that a plaintiff can recover for pain and suffering when he has failed to show that any creditor or other person ever learned of the derogatory information from a credit reporting agency." 56 F.3d at 475. There, the plaintiff's argument "boil[ed] down to the bare contention that he is entitled to damages for pain and suffering simply because he *knew* of an inaccurate and potentially damaging item in his credit report." *Id.*

The Court agrees with Judge Janet Bond Arterton that "*Casella* stands for the proposition that recovery under FCRA for pain and suffering is precluded where the plaintiff cannot show that a creditor was aware of the inaccurate information, because mere knowledge by a plaintiff of *potentially* damaging credit information is insufficient FCRA damages." *McMillan*, 170 F.Supp. 3d at 286, n.10. The parties do not seriously dispute this legal proposition, but instead present differing views on whether the underlying evidence satisfies that standard. It appears from the evidence submitted that some creditors (in particular MCI Worldcom Wireless and Fleet Bank) may well have become aware of the allegedly inaccurate information regarding Ms. Spector's account.[4] *See* Attachment to Pl.'s Opp'n Mot. for Sum. J. At a minimum, the evidence is currently equivocal on that point. Drawing all inferences in favor of plaintiff, as the Court must, the Court concludes that Trans Union has not demonstrated that it is entitled to judgment as a

---

[4] In *Casella*, the Second Circuit stated that Casella had presented no evidence that Trans Union "provided appellant's credit report to any third party." 56 F.3d at 475. That is not necessarily the case here since Trans Union's counsel acknowledged at argument that even though MCI Worldcom Wireless and Fleet Bank did not receive Ms. Spector's actual credit report, they received "scoring" that would have reflected the disputed "Chapter 7 Bankruptcy." At trial, the parties may well elaborate on this issue and by their proof, demonstrate that different inferences are appropriate.

matter of law on the issue of causation.

Accordingly, the Court denies Trans Union's motion for summary judgment on Ms. Spector's FCRA claim, and for similar reasons, the Court also denies Trans Union's motion for summary judgment on Ms. Spector's CUTPA claims.

II.

Under the FCRA, "[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . such amount of punitive damages as the court may allow." 15 U.S.C. § 1681n. To show willful noncompliance with the FCRA, a plaintiff must show that the defendant acted in "conscious disregard" of the consumer's rights or that the defendant's noncompliance with the FCRA was "deliberate and purposeful." *See Casella*, 56 F.3d at 476; *see also McCauley*, 2003 WL 22845741, at *3. In *Casella*, the Second Circuit affirmed a grant of summary judgment on a plaintiff's FCRA punitive damages claim because the defendant's "course of conduct [did] not support the kind of 'conscious disregard' or 'deliberate and purposeful' actions necessary to make out a claim for wilful noncompliance under the FCRA." 56 F.3d at 476.

Both Trans Union and Ms. Spector move for summary judgment on Ms. Spector's claim for punitive damages. Trans Union argues that its conduct was not willful as a matter of law, while Ms. Spector takes precisely the opposite position, arguing that Trans Union was willful as a matter of law. *See* Def.'s Mem. Supp. Mot. Sum. J. at 21; Compl., ¶ 4. On the basis of the record presented to date, the Court is not in a position to conclude, as Ms. Spector argues, that Trans Union's conduct was willful *as a matter of law*. Accordingly, the Court will deny Ms.

9

Spector's motion for partial summary judgment on her claim for punitive damages.

As to Trans Union's motion for summary judgment, on the basis of the current record it is certainly questionable whether Trans Union engaged in the kind of deliberate or reckless conduct that would warrant punitive damages. *See, e.g., Casella*, 56 F.3d at 476; *see also McCauley*, 2003 WL 22845741, at *3. Nonetheless, in view of the record submitted to date and the procedural posture of the case, the Court believes that the most prudent course is to deny Trans Union's motion at this time. In view of the Court's decision on summary judgment as to FCRA liability, it will be necessary to conduct a trial of Ms. Spector's FCRA claims. Trans Union is, therefore, free to renew its motion for judgment on Ms. Spector's punitive damage claim at the close of the evidence. The Court believes that it will be in a better position to consider Trans Union's liability for punitive damages after the Court has heard all of the witnesses and seen all the evidence presented at trial.

### III.

Finally, Trans Union moves for summary judgment on Ms. Spector's ECOA claim. ECOA states that it shall be unlawful for any "creditor" to discriminate against any "applicant" with respect to any aspect of a credit transaction on the basis of, among other things, "marital status." 15 U.S.C. § 1691(a)(1). Ms. Spector asserts that by including information about her husband's bankruptcy on her credit report, Trans Union violated ECOA. The Court does not believe that Ms. Spector has presented any genuine issues of material fact regarding this claim, and therefore, the Court grants Trans Union summary judgment on Ms. Spector's ECOA claim. The Court does so for several reasons.

As an initial matter, it is not clear that Trans Union is a "creditor" as that term is defined

in ECOA.  The act defines "creditor" as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e).  In addition, a proper plaintiff in an ECOA action is an "applicant", defined as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit."  *Id.* § 1691a(b).  Ms. Spector does not claim that she applied for credit, directly or indirectly, from Trans Union.

More importantly, however, there is no indication in the record that in any of its conduct in this case, Trans Union discriminated against Ms. Spector on the basis of her marital status.  It is undisputed that Ms. Spector was an authorized user of her husband's credit card, that he filed for Chapter 7 bankruptcy and that his credit card (on which Ms. Spector was an authorized user) was implicated in that bankruptcy.  Whether Trans Union should include on credit reports of authorized users of credit cards information regarding the bankruptcies of the principal card holders and whether the way in which Trans Union discloses that information was negligent and misleading are certainly issues under FCRA that will need to be resolved at trial.  However, Ms. Spector has not presented any evidence from which a trier of fact could conclude that Trans Union included the bankruptcy information on Ms. Spector's credit report in order to discriminate against her on the basis of her marital status, as required by ECOA.  "[C]ourts have generally required proof in ECOA cases to conform to the traditional Title VII tests." *Gross v. U.S. Small Business Admin.,* 669 F.Supp. 50, 52 (N.D.N.Y., 1987), *aff'd* 867 F.2d 1423 (2d Cir. 1988).  The analytical framework for a prima facie ECOA violation on the basis of marital status requires a

11

plaintiff to show: "(1) Plaintiff was a member of a protected class; (2) Plaintiff applied for credit from Defendants; (3) Plaintiff was qualified for credit; and (4) despite Plaintiff's qualification, Defendants denied her credit application." *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 877 (6th Cir. 2002). The facts construed in the light most favorable to Ms. Spector fail to meet even the *de minimis* requirement for a prima facie case under ECOA. *Id.* As a result, Trans Union is entitled to summary judgment on Ms. Spector's ECOA claim.

IV.

Accordingly, for the reasons stated, the Court DENIES plaintiff's Motion for Partial Summary Judgment [doc. # 66] in its entirety and GRANTS in part and DENIES in part Trans Union's Motion for Summary Judgment [ doc. # 63].


IT IS SO ORDERED.


/s/      Mark R. Kravitz
              U.S.D.J.


Dated at New Haven, Connecticut: January 28, 2004.