IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RACHEL SPECTOR<br><br>                  Plaintiff,<br><br>v.<br><br>TRANS UNION LLC, and<br>FIRST USA BANK, N.A.<br><br>                  Defendants. | C.A. NO. 3:02-CV-861 MRK<br><br>DATED:    March 5, 2004 |
| RACHEL SPECTOR<br><br>                  Plaintiff,<br><br>v.<br><br>TRANS UNION LLC<br><br>                  Defendants. | C.A. NO. 3:03-CV-00251 MRK |

**TRANS UNION'S MEMORANDUM OF LAW IN SUPPORT OF
THIRD MOTION TO COMPEL DEPOSITION OF PLAINTIFF,
FOR SANCTIONS AND FOR APPOINTMENT OF SPECIAL MASTER**

Trans Union LLC ("Trans Union"), by and through its undersigned attorneys, states as follows in support of its third motion to compel the deposition of plaintiff, for sanctions and for the appointment of a special master to oversee the conduct of plaintiff's deposition:

**I.    INTRODUCTION**

Rule 30 <u>Depositions Upon Oral Examination</u>, provides in pertinent part:

> (d)    Schedule and Duration; Motion to Terminate or Limit Examination.
>
> (1)    Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege....

On February 5, 2004, after two motions to compel and two court Orders requiring her to appear, plaintiff finally submitted to her deposition.[1] However, the deposition was rendered utterly useless because her counsel, Joanne Faulkner, Esquire, made numerous improper, disruptive and leading objections in direct violation of Rule 30. In fact, at times Ms. Faulkner actually responded to questions and testified before plaintiff could answer.

Undersigned counsel for Trans Union made efforts to resolve this discovery dispute but was met with such an unreasonable response, the effort was terminated. As more fully set forth in the annexed Exhibits and Declaration (Declaration and Good Faith Certificate of Bruce Luckman, Exhibit "1"), Trans Union respectfully submits that Ms. Faulkner ought to be sanctioned and plaintiff and/or her counsel required to pay the costs of a special master to oversee the conduct of plaintiff's deposition.

### 1.   Faulkner Testifies for Plaintiff

Remarkably, Ms. Faulkner actually testified for plaintiff on several occasions. Counsel's statements were **not** merely leading or suggestive objections, but actual testimony.

First, Trans Union's counsel asked a simple question:

> Q. Okay. Let's start again. What is the information that you are complaining about? What information did Trans Union report that caused you to sue?

Before the witness could respond, Ms. Faulkner interjected:

> MS. FAULKNER: We have answered that in our written discovery responses and we will stand by that answer. (Spector Dep. pp. 7-8, exhibit "2" hereto)

---

[1] This Court entered Orders on April 30 and September 12, 2003, directing plaintiff to appear for her deposition. (Dockets 93 and 114).

Next, when Trans Union's counsel sought to inquire about damages, Ms. Faulkner stepped in with her version of the facts, as well as her rules on depositions:

> Q. For example, did the information cause you to be denied credit, to your knowledge?
>
> A. Yes.
>
> Q. When was that?
>
> MS. FAULKNER: She did testify *[in a prior deposition in an action to which Trans Union was not a party]* to one occasion in the first deposition **and we will not testify to that again.**
>
> Q. That was the Best Buy situation?
>
> MS. FAULKNER: Yes.
>
> Q. So there is nothing else other than Best Buy; is that correct?
>
> MS. FAULKNER: No. (Spector Dep. p.10)(emphasis supplied)

Ms. Faulkner's willingness and insistence upon testifying for or with her client regarding what did or did not happen are highly inappropriate and prejudicial to Trans Union. Well beyond leading the witness or merely suggesting answers, she became the witness respecting material issues. As a result, Ms. Faulkner's interjections made impossible any productive questioning (or follow-up questioning) of the witness. As such, the any questions answered were so tainted by Ms. Faulkner's conduct that the harm can only be remedied by a new deposition, free from the wrongful conduct.

Significantly, Ms. Faulkner interjected **her** recollection about facts from the prior deposition, even though she never read it:

3

>   our complaints is that these wrongful reports
>   have reappeared over the years. (Spector Dep. pp. 47-48)[3]

Under the circumstances, her comments were in bad faith and no doubt confused and misled the actual witness. The line of questions which Ms. Faulkner effectively disrupted concerned damages and whether the alleged damages were actually related to other events, or even exist at all. Putting aside the materiality of that particular line of questions, Ms. Faulkner's tactics prevented Trans Union's counsel for engaging in any meaningful inquiry of the plaintiff.

Trans Union respectfully submits that it is entitled to re-examine plaintiff without any testimony from Ms. Faulkner, or any of the sort of improper instructions or leading objections described below. (See e.g. Fisher v. Glenn Goord, et al, 184 F.R.D. 45, 48-49 (N.D.N.Y. (1999), adopting deposition rules and guidelines from Hall v. Clifton Precision, 150 F.R.D. (E.D.Pa. 1993), including: "counsel shall not direct or request that a witness not answer a question, unless that counsel has objected to the question on the ground that the answer is protected by a privilege or a limitation on evidence directed by the court;" "counsel shall not make objections or statements which might suggest an answer to a witness;" "counsel for a witness shall not engage in any argument with examining counsel as to the objectionability of any question;" "counsel shall [not] make any comment or engage deposing counsel in an argument…about the nature of the question.")

Because of the egregious nature of Ms. Faulkner's conduct, testimony and disruptions, Trans Union submits she ought to be sanctioned and directed to pay all costs associated with a

---

[3] When Trans Union's counsel attempted to determine when plaintiff first became aware of inaccurate reporting respecting a bankruptcy reference, Ms. Faulkner, apparently concerned her client did not know, interjected:
Q.   Okay. What I am trying to get at is when did you first discover that Trans Union was reporting something that you understood to mean that Trans Union was saying that you filed bankruptcy?  MS. FAULKNER: Obviously, it was before the letter of April 22, 2001. She already testified that she does not remember. (Spector Dep. p. 59)

5

special master to referee the deposition, and the costs associated with the original useless deposition.

### 2.  Faulkner's Improper Imposition of Limitations on Inquiries

Part of Ms. Faulkner's improper conduct appears to grounded in her mistaken belief that plaintiff need not answer questions which were (or may have been) in Ms. Faulkner's view, asked about in other cases, by other lawyers or interrogatories. ("...she did testify... in the first deposition, ... we will not testify again." Spector Dep. p.10) That particular contention is the height of bad faith because Ms. Faulkner concedes that she never read the deposition. (See Spector Dep. p. 24 and discussion, *supra*) Moreover, Judge Goettel has already explained that interrogatories and depositions "serve different purposes" and responses to one do not rule out responses to the other. In Artese v. Academy Collection Service, *1998 U.S. Dist. LEXIS 8743*, (D.C.CT. 1998), a case in which Ms. Faulkner represented the plaintiff, Judge Goettel cogently explained:

> Plaintiff's counsel's second error is her belief that if something has been responded to on a deposition (or even if there was a refusal to answer by the plaintiff) it is excessive to frame the same question as an interrogatory. Depositions and interrogatories serve different purposes. A witness at trial can give an answer inconsistent to a deposition answer and the deposition serves only to establish a prior inconsistency. On the other hand, an interrogatory answer binds a party just as its pleadings do unless the Court grants a motion to amend.
>
> **A further mistake of plaintiff's counsel is her belief that if she thinks deposition questions exceed those matters properly relevant at trial, she may direct her client not to answer.** Directions not to answer (except where claims of privilege are involved) are not and should not be made. If a line of questions seem to go far out of the realm of relevance, the proper approach is to cease the deposition and seek judicial rulings. The questions to which she directed her client not to respond to were for the most part not so extreme as to warrant interrupting the deposition. (emphasis supplied)

6

Despite that direction from Judge Goettel, here Ms. Faulkner asserted that plaintiff need not answer questions about things which were (or might have been) in Ms. Faulkner's view, asked about or answered in written discovery. (Spector Dep. p. 36) Ms. Faulkner interposed an objection to Trans Union's effort to mark plaintiff's discovery responses and announced her rule that no questions can be asked about such matters:

> MS. FAULKNER: You will not ask any questions about questions.
>
> MR. CREECH: I am not going to ask questions about questions. I am going to ask questions about answers.
>
> MS. FAULKNER: **You will not ask questions about answers, and they have been answered under oath.**
>
> MR. CREECH: Well, I am going to ask my question and if you want to object and instruct the witness not to answer, that's fine. But I am marking Exhibit 2 as a July 1, 2003, Plaintiff's response to Trans Union's discovery.
>
> MS. FAULKNER: I am objecting to the marking and I object to any questions about it pursuant to – (Spector Dep. p. 36)(emphasis supplied)

In this connection, when Trans Union's counsel sought to inquire about plaintiff's reference in written discovery to a credit turn down by Chase bank, Ms. Faulkner refused and interposed the following "objections":

> MS. FAULKNER: **Credibility is not a proper subject for a deposition.**
>
> MS. FAULKNER: **Discovery concerns the underlying facts of the case and not the litigation.** We stand by – [the discovery answers?] (Spector Deposition, pp. 37 & 38)(emphasis supplied)

Although the second "objection" is a *non sequitor*, the disruptive and confusing impact of the "objections" (to the witness and the record) cannot be overstated. Trans Union's was prevented from a fair opportunity to depose plaintiff because of Ms. Faulkner's erroneous,

7

unfounded and unreasonable statements, limitations, objections and testimony. (See <u>Unique Concepts, Inc. v. Brown, et al.</u>, 115 F.R.D. 292, 294 (S.D.N.Y. 1987)(where Senior Judge Pollack sanctioned an attorney for disrupting a deposition and ordered the deposition to be retaken "with the Court present," stating counsel's "long winded interruptions were wasteful and entirely without just cause. [He] destroyed the deposition and should be responsible for the excess waste and costs incurred as a result of his misconduct." and <u>Heller v. Wofsey, Certilman, Haft, LeBow & Balin</u>, 1989 U.S. Dist LEXIS 7765)(S.D.N.Y.1989)

Finally, Ms. Faulkner's repeated demands and "objections" that deposition exhibits were not furnished in advance are entirely without basis. (Spector Dep. pp. 37 and 85, 86) Neither deponents nor their counsel have a right to pre-examine deposition exhibits. In fact, the examining counsel is entitled to obtain "un-refreshed" deposition testimony. See <u>Bryant v. The City of New York</u>, 2001 U.S. Dist. LEXIS 5745 (S.D.N.Y. 2001)(depositions ordered to take place before documents produced); <u>Jack Ken Mills v. Energy Transportation Corp.</u>, 1996 U.S.Dist LEXIS 18889 (S.D.N.Y. 1996)(same and collecting cases dating back to 1956 – <u>General Houses, Inc. v. Marloch Manufacturing Corp.</u>, 239 F.2d 510, 514 (2d Cir. 1956); <u>Sherrell Perfumes, Inc. v. Revlon, Inc.</u>, 1977 U.S. Dist. LEXIS 12463, (S.D.N.Y. 1977)(same with respect to tapes); and <u>Fisher</u> and <u>Hall</u> *supra* imposing guidelines which expressly stated: "The witness and the witness' counsel do not have the right to discuss documents privately before the witness answers questions about them."

It is respectfully submitted that the presence and authority of a special master is required to enable Trans Union to conduct an examination of plaintiff pursuant to the Court rules and free from Ms. Faulkner's unfair and disruptive tactics and baseless demands.

8

2. **Faulkner's Assertion of the Attorney Client Privilege Was Improper.**

In addition to simply interposing unfounded, suggestive and argumentative objections, Ms. Faulkner also improperly asserted the privilege and blocked important areas of inquiry. The most significant instruction came when Trans Union sought to ask plaintiff about a "crucial" dispute letter which Ms. Faulkner sent to Trans Union respecting plaintiff's credit report. The letter concerned an account which was **not** currently reporting in plaintiff's Trans Union file. As such, the circumstances of why the dispute was even made, and what possible "distress" plaintiff might have suffered because the account was not present are clearly germane. (What did she know and did it upset her?) The line of questioning was barred by unfounded assertions of the attorney client privilege:

> Q. Exhibit 4 is a letter written by your attorney, Ms. Faulkner, addressed to credit bureau and says "Dear Credit Bureau." Do you see that?
>
> A. Yes.
>
> Q. It's dated March 4, 2002, do you see that?
>
> A. Yes.
>
> Q. Did you see this letter before March 4 or before it was sent to Trans Union?
>
> MS. FAULKNER: Objection. Privileged.
>
> MR. CREECH: Whether she saw the letter? Is she not allowed to answer whether she saw the letter before it was sent?
>
> MS. FAULKNER: That is privileged. It is outside the scope of discovery. We will stipulate the letter was sent and received by Trans Union. (Spector Dep. p. 62)

9

### III. CONCLUSION

For all the above reasons and authorities, Trans Union respectfully requests this Court order that plaintiff's be re-deposed, plaintiff to pay the costs of a special master at such deposition, and that the Court enter sanctions against Plaintiff and/or her counsel including attorneys fees incurred by Trans Union in the filing of this motion.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RACHEL SPECTOR<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION LLC, and<br>FIRST USA BANK, N.A.<br><br>Defendants. | C.A. NO. 3:02-CV-861 MRK<br><br>DATED:   March 5, 2004 |
| RACHEL SPECTOR<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION LLC<br><br>Defendants. | C.A. NO. 3:03-CV-00251 MRK |

**TRANS UNION'S MEMORANDUM OF LAW IN SUPPORT OF
THIRD MOTION TO COMPEL DEPOSITION OF PLAINTIFF,
FOR SANCTIONS AND FOR APPOINTMENT OF SPECIAL MASTER**

Trans Union LLC ("Trans Union"), by and through its undersigned attorneys, states as follows in support of its third motion to compel the deposition of plaintiff, for sanctions and for the appointment of a special master to oversee the conduct of plaintiff's deposition:

**I.   INTRODUCTION**

Rule 30 <u>Depositions Upon Oral Examination</u>, provides in pertinent part:

> (d)   Schedule and Duration; Motion to Terminate or Limit Examination.
>
> (1)   Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege....

On February 5, 2004, after two motions to compel and two court Orders requiring her to appear, plaintiff finally submitted to her deposition.[1] However, the deposition was rendered utterly useless because her counsel, Joanne Faulkner, Esquire, made numerous improper, disruptive and leading objections in direct violation of Rule 30. In fact, at times Ms. Faulkner actually responded to questions and testified before plaintiff could answer.

Undersigned counsel for Trans Union made efforts to resolve this discovery dispute but was met with such an unreasonable response, the effort was terminated. As more fully set forth in the annexed Exhibits and Declaration (Declaration and Good Faith Certificate of Bruce Luckman, Exhibit "1"), Trans Union respectfully submits that Ms. Faulkner ought to be sanctioned and plaintiff and/or her counsel required to pay the costs of a special master to oversee the conduct of plaintiff's deposition.

1. **Faulkner Testifies for Plaintiff**

Remarkably, Ms. Faulkner actually testified for plaintiff on several occasions. Counsel's statements were **not** merely leading or suggestive objections, but actual testimony.

First, Trans Union's counsel asked a simple question:

> Q. Okay. Let's start again. What is the information that you are complaining about? What information did Trans Union report that caused you to sue?

Before the witness could respond, Ms. Faulkner interjected:

> MS. FAULKNER: We have answered that in our written discovery responses and we will stand by that answer. (Spector Dep. pp. 7-8, exhibit "2" hereto)

---

[1] This Court entered Orders on April 30 and September 12, 2003, directing plaintiff to appear for her deposition. (Dockets 93 and 114).

2

Next, when Trans Union's counsel sought to inquire about damages, Ms. Faulkner stepped in with her version of the facts, as well as her rules on depositions:

> Q. For example, did the information cause you to be denied credit, to your knowledge?
>
> A. Yes.
>
> Q. When was that?
>
> MS. FAULKNER: She did testify *[in a prior deposition in an action to which Trans Union was not a party]* to one occasion in the first deposition **and we will not testify to that again.**
>
> Q. That was the Best Buy situation?
>
> MS. FAULKNER: Yes.
>
> Q. So there is nothing else other than Best Buy; is that correct?
>
> MS. FAULKNER: No. (Spector Dep. p.10)(emphasis supplied)

Ms. Faulkner's willingness and insistence upon testifying for or with her client regarding what did or did not happen are highly inappropriate and prejudicial to Trans Union. Well beyond leading the witness or merely suggesting answers, she became the witness respecting material issues. As a result, Ms. Faulkner's interjections made impossible any productive questioning (or follow-up questioning) of the witness. As such, the any questions answered were so tainted by Ms. Faulkner's conduct that the harm can only be remedied by a new deposition, free from the wrongful conduct.

Significantly, Ms. Faulkner interjected **her** recollection about facts from the prior deposition, even though she never read it:

3

> our complaints is that these wrongful reports
> have reappeared over the years. (Spector Dep. pp. 47-48)[3]

Under the circumstances, her comments were in bad faith and no doubt confused and misled the actual witness. The line of questions which Ms. Faulkner effectively disrupted concerned damages and whether the alleged damages were actually related to other events, or even exist at all. Putting aside the materiality of that particular line of questions, Ms. Faulkner's tactics prevented Trans Union's counsel for engaging in any meaningful inquiry of the plaintiff.

Trans Union respectfully submits that it is entitled to re-examine plaintiff without any testimony from Ms. Faulkner, or any of the sort of improper instructions or leading objections described below. (See e.g. Fisher v. Glenn Goord, et al, 184 F.R.D. 45, 48-49 (N.D.N.Y. (1999), adopting deposition rules and guidelines from Hall v. Clifton Precision, 150 F.R.D. (E.D.Pa. 1993), including: "counsel shall not direct or request that a witness not answer a question, unless that counsel has objected to the question on the ground that the answer is protected by a privilege or a limitation on evidence directed by the court;" "counsel shall not make objections or statements which might suggest an answer to a witness;" "counsel for a witness shall not engage in any argument with examining counsel as to the objectionability of any question;" "counsel shall [not] make any comment or engage deposing counsel in an argument...about the nature of the question.")

Because of the egregious nature of Ms. Faulkner's conduct, testimony and disruptions, Trans Union submits she ought to be sanctioned and directed to pay all costs associated with a

---

[3] When Trans Union's counsel attempted to determine when plaintiff first became aware of inaccurate reporting respecting a bankruptcy reference, Ms. Faulkner, apparently concerned her client did not know, interjected: Q. Okay. What I am trying to get at is when did you first discover that Trans Union was reporting something that you understood to mean that Trans Union was saying that you filed bankruptcy? MS. FAULKNER: Obviously, it was before the letter of April 22, 2001. She already testified that she does not remember. (Spector Dep. p. 59)

5

special master to referee the deposition, and the costs associated with the original useless deposition.

### 2. Faulkner's Improper Imposition of Limitations on Inquiries

Part of Ms. Faulkner's improper conduct appears to grounded in her mistaken belief that plaintiff need not answer questions which were (or may have been) in Ms. Faulkner's view, asked about in other cases, by other lawyers or interrogatories. ("...she did testify... in the first deposition, ... we will not testify again." Spector Dep. p.10) That particular contention is the height of bad faith because Ms. Faulkner concedes that she never read the deposition. (See Spector Dep. p. 24 and discussion, *supra*) Moreover, Judge Goettel has already explained that interrogatories and depositions "serve different purposes" and responses to one do not rule out responses to the other. In <u>Artese v. Academy Collection Service</u>, *1998 U.S. Dist. LEXIS 8743*, (D.C.CT. 1998), a case in which Ms. Faulkner represented the plaintiff, Judge Goettel cogently explained:

> Plaintiff's counsel's second error is her belief that if something has been responded to on a deposition (or even if there was a refusal to answer by the plaintiff) it is excessive to frame the same question as an interrogatory. Depositions and interrogatories serve different purposes. A witness at trial can give an answer inconsistent to a deposition answer and the deposition serves only to establish a prior inconsistency. On the other hand, an interrogatory answer binds a party just as its pleadings do unless the Court grants a motion to amend.
>
> **A further mistake of plaintiff's counsel is her belief that if she thinks deposition questions exceed those matters properly relevant at trial, she may direct her client not to answer.** Directions not to answer (except where claims of privilege are involved) are not and should not be made. If a line of questions seem to go far out of the realm of relevance, the proper approach is to cease the deposition and seek judicial rulings. The questions to which she directed her client not to respond to were for the most part not so extreme as to warrant interrupting the deposition. (emphasis supplied)

6

Despite that direction from Judge Goettel, here Ms. Faulkner asserted that plaintiff need not answer questions about things which were (or might have been) in Ms. Faulkner's view, asked about or answered in written discovery. (Spector Dep. p. 36) Ms. Faulkner interposed an objection to Trans Union's effort to mark plaintiff's discovery responses and announced her rule that no questions can be asked about such matters:

> MS. FAULKNER: You will not ask any questions about questions.
>
> MR. CREECH: I am not going to ask questions about questions. I am going to ask questions about answers.
>
> MS. FAULKNER: **You will not ask questions about answers, and they have been answered under oath.**
>
> MR. CREECH: Well, I am going to ask my question and if you want to object and instruct the witness not to answer, that's fine. But I am marking Exhibit 2 as a July 1, 2003, Plaintiff's response to Trans Union's discovery.
>
> MS. FAULKNER: I am objecting to the marking and I object to any questions about it pursuant to -- (Spector Dep. p. 36)(emphasis supplied)

In this connection, when Trans Union's counsel sought to inquire about plaintiff's reference in written discovery to a credit turn down by Chase bank, Ms. Faulkner refused and interposed the following "objections":

> MS. FAULKNER: **Credibility is not a proper subject for a deposition.**
>
> MS. FAULKNER: **Discovery concerns the underlying facts of the case and not the litigation.** We stand by -- [the discovery answers?] (Spector Deposition, pp. 37 & 38)(emphasis supplied)

Although the second "objection" is a *non sequitor*, the disruptive and confusing impact of the "objections" (to the witness and the record) cannot be overstated. Trans Union's was prevented from a fair opportunity to depose plaintiff because of Ms. Faulkner's erroneous,

7

unfounded and unreasonable statements, limitations, objections and testimony. (See <u>Unique Concepts, Inc. v. Brown, et al.</u>, 115 F.R.D. 292, 294 (S.D.N.Y. 1987)(where Senior Judge Pollack sanctioned an attorney for disrupting a deposition and ordered the deposition to be retaken "with the Court present," stating counsel's "long winded interruptions were wasteful and entirely without just cause. [He] destroyed the deposition and should be responsible for the excess waste and costs incurred as a result of his misconduct." and <u>Heller v. Wofsey, Certilman, Haft, LeBow & Balin</u>, 1989 U.S. Dist LEXIS 7765)(S.D.N.Y.1989)

Finally, Ms. Faulkner's repeated demands and "objections" that deposition exhibits were not furnished in advance are entirely without basis. (Spector Dep. pp. 37 and 85, 86)  Neither deponents nor their counsel have a right to pre-examine deposition exhibits.  In fact, the examining counsel is entitled to obtain "un-refreshed" deposition testimony.  See <u>Bryant v. The City of New York</u>, 2001 U.S. Dist. LEXIS 5745 (S.D.N.Y. 2001)(depositions ordered to take place before documents produced); <u>Jack Ken Mills v. Energy Transportation Corp.</u>, 1996 U.S.Dist LEXIS 18889 (S.D.N.Y. 1996)(same and collecting cases dating back to 1956 – <u>General Houses, Inc. v. Marloch Manufacturing Corp.</u>, 239 F.2d 510, 514 (2d Cir. 1956); <u>Sherrell Perfumes, Inc. v. Revlon, Inc.</u>, 1977 U.S. Dist. LEXIS 12463, (S.D.N.Y. 1977)(same with respect to tapes); and <u>Fisher</u> and <u>Hall</u> *supra* imposing guidelines which expressly stated: "The witness and the witness' counsel do not have the right to discuss documents privately before the witness answers questions about them."

It is respectfully submitted that the presence and authority of a special master is required to enable Trans Union to conduct an examination of plaintiff pursuant to the Court rules and free from Ms. Faulkner's unfair and disruptive tactics and baseless demands.

8

2.  **Faulkner's Assertion of the Attorney Client Privilege Was Improper.**

In addition to simply interposing unfounded, suggestive and argumentative objections, Ms. Faulkner also improperly asserted the privilege and blocked important areas of inquiry. The most significant instruction came when Trans Union sought to ask plaintiff about a "crucial" dispute letter which Ms. Faulkner sent to Trans Union respecting plaintiff's credit report. The letter concerned an account which was **not** currently reporting in plaintiff's Trans Union file. As such, the circumstances of why the dispute was even made, and what possible "distress" plaintiff might have suffered because the account was not present are clearly germane. (What did she know and did it upset her?) The line of questioning was barred by unfounded assertions of the attorney client privilege:

> Q. Exhibit 4 is a letter written by your attorney, Ms. Faulkner, addressed to credit bureau and says "Dear Credit Bureau." Do you see that?
>
> A. Yes.
>
> Q. It's dated March 4, 2002, do you see that?
>
> A. Yes.
>
> Q. Did you see this letter before March 4 or before it was sent to Trans Union?
>
> MS. FAULKNER: Objection. Privileged.
>
> MR. CREECH: Whether she saw the letter? Is she not allowed to answer whether she saw the letter before it was sent?
>
> MS. FAULKNER: That is privileged. It is outside the scope of discovery. We will stipulate the letter was sent and received by Trans Union. (Spector Dep. p. 62)

9

Faced with such an unreasonable position, Trans Union's counsel even agreed to ask a question suggested by Ms. Faulkner, but her own question was met with an objection:

> Q.  Ms. Spector, did you see this letter before it was sent to Trans Union?
>
> MS. FAULKNER:  I have objected to that question and she will not answer it. **You may ask what she knows about the letter.**
>
> **Q.  What do you know about this letter, Ms. Spector?**
>
> MS. FAULKNER:  You may ask her a question, not a general --
>
> MR. CREECH:  It is a question.
>
> MS. FAULKNER:  All right.  We will object to that. Privileged. (Spector Dep. p. 62)

> Q.  Okay.  Were you aware on or before March 4, 2002, that Trans Union had a Wachovia Bank card account listed as included in Chapter 7 bankruptcy?
>
> A.  I know I had seen it somewhere, but I don't recall dates.
>
> Q.  Okay.  Was it before your attorney communicated to Trans Union on your behalf or was it after your attorney communicated to Trans Union on your behalf?
>
> MS. FAULKNER:  Objection. Privilege, Rule 26. (Spector Dep. pp. 64-65)

There is simply no legal basis for the assertion of the privilege. Trans Union is entitled to know if plaintiff was aware of the content of her report before a dispute letter was written on her behalf. Moreover, Trans Union is entitled to a fair opportunity to explore that issue without counsel's disruptive and suggestive statements and objections. The improper instructions rendered any inquiry into the central FCRA dispute claim useless. Importantly, if plaintiff did not even know the account was in her report, she certainly could not claim emotional distress

10

damages in connection with that account. As a result Trans Union was prevented from inquiry about any related distress as well. In this connection, Ms. Faulkner asserted the irresponsible explanation that she was plaintiff's "agent" and therefore knowledge was imputed:

> MR. CREECH: I don't need an answer to the question as to whether she knew the dispute was made?
>
> MS. FAULKNER: I am her agent. She knows what I know and vice versa. (Spector Dep. p. 69)

Although that concession likely eviscerates any distress claim associated with the dispute and account, Trans Union is still entitled to inquire about plaintiff knowledge of the main contention in the action.[4] Plaintiff's counsel's flippant suggestion that Trans Union move on alone is cause for an imposition of sanctions:

MS. FAULKNER: **Okay. So pretend she answered and go on to the next question.** (Spector Dep. p. 69)

Trans Union respectfully submits that plaintiff should be directed to appear for her deposition and that Ms. Faulkner be directed to limit her objections and comments to those allowed under the rules of court. Because of the almost incessant interruptions, Trans Union further submits that a court authorized special master is required to allow the deposition to proceed in a productive fashion.

---

[4] Plaintiff's counsel's assertions that the inquiries were somehow directed at counsel, not plaintiff's case, are incomprehensible: MS. FAULKNER: I don't appreciate these "Get Faulkner" questions. (Spector Dep. p. 66, see also p. 69)

11

### III. CONCLUSION

For all the above reasons and authorities, Trans Union respectfully requests this Court order that plaintiff's be re-deposed, plaintiff to pay the costs of a special master at such deposition, and that the Court enter sanctions against Plaintiff and/or her counsel including attorneys fees incurred by Trans Union in the filing of this motion.

                                          Respectfully Submitted,

                                          BRUCE S. LUCKMAN (ct 10830)
                                          TIMOTHY P. CREECH (*PHV*)ct24399
                                          SATZBERG, TRICHON,
                                            KOGAN & WERTHEIMER, P.C.
                                          1818 Market St., 30th Floor
                                          Philadelphia, PA 19103
                                          (215) 575-7600; Fax: (215) 575-7688
                                          email: bluckman@mstkw.com

*Local Counsel:*

Ira W. Bloom, Esq. (ct 07629)
WAKE, SEE, DIMES & BRYNICZKA
27 Imperial Ave., P.O. Box 777
Westport, CT 06881-0777
(203) 227-9545; Fax: (203) 226-1641
email: ibloom@wsdb.com

*Counsel for Defendant,*
*Trans Union LLC*