UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RACHEL SPECTOR

v.                                    CASE NO. 3:02CV 861 (MRK)

TRANS UNION LLC                       March 27, 2004

## PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL

Plaintiff opposes defendant's Motion to Compel (Doc. No. 123) regarding a deposition which it did not notice until discovery closed for the second time.[1] Plaintiff would be chagrined if the few pages of the 80+ page deposition, taken out of context, reflected accurately the proceedings at the deposition. They do not, which is perhaps why the lawyer who took the deposition by telephone (Mr. Creech) is not the one who submitted the brief or supporting affidavit. The vast majority of the deposition was inconsequential, with normal objections as to form. (Mr. Creech persisted in asking compound questions, or overbroad questions with no time limit. Unfortunately, he also wasted time by asking about years old documents but not showing them to plaintiff.)

Plaintiff is chagrined because defendant's motion (1) ignores the agreements of the parties at the deposition; (2) relies on misrepresentations which it has refused to withdraw; (3) was filed without any effort to resolve differences; and (4) appears to be a tactical strategy rather than a sincere effort to obtain discovery. Indeed, defendant refused to disclose to plaintiff, and does not disclose to the Court, what areas it had not covered.

---

[1] See Doc. No. 70, wherein plaintiff opposed a motion to compel deposition in part because defendant noticed it after discovery closed for the first time; and email of Jan. 2, 2004 attached.

<u>Agreements at the deposition obviate most of defendant's assertions.</u> At page 6 of the deposition, lines 4-9, the parties stipulated that the answers in the first deposition were true and correct and no questions would be asked about the answers. Therefore, Def. Mem. at 3-4, 6, concerning "refusal" to again testify about the first deposition, contravenes defendant's own agreement that no such questions would be asked.

At Dep. page 4, plaintiff noted her physical discomfort and defendant agreed to focus the deposition. See p. 5, 8. At p. 79, defendant agreed to ask one more question before concluding; and agreed to end at p. 85, subject to reconvening. No effort was made to reconvene, or even suggest any areas that were not covered in 2 ½ hours.

<u>Misrepresentations about depositions.</u> Defendant attacks counsel for saying she had not seen the deposition. What counsel said was true; defendant refused to withdraw the attack. See letter of 3/12 and email of 3/19, attached. Defendant attacks counsel for supposedly saying she had not read the prior deposition. Counsel would not have said that since she had read it. The court reporter obviously missed a few words here and there. See p. 6 line 23 ("I will [rephrase] the question"). Defendant's Affidavit, its Mem. at 3-4, 6 and footnote 3 is a superfluous attack on counsel's integrity.[2]

---

[2] It is beyond cavil that "it is highly improper for counsel . . . to make groundless charges against fellow member of the bar and officers of this court." <u>United States v. Abrams</u>, 357 F.2d 539, 551 (2d Cir.1966). See also <u>Nault's Auto Sales v. American Honda Motor Co</u>., 148 F.R.D. 25, 36 (D.N.H. 1993):
When presented with evidence which is consistent with two possible and equally plausible, but inconsistent, interpretations of how opposing counsel have conducted themselves, professional courtesy and dignity militate in favor of adopting that which is consistent with ethical and professional conduct, at least until the contrary is demonstrated beyond mere suspicion. When publishing allegations relating to misconduct by opposing counsel in pleadings filed with a court even more circumspection is expected from an attorney as a matter of professionalism.
<u>Id</u>. at 34.

<u>Effort to resolve differences.</u> Defendant did not respond to plaintiff's pleas to identify any areas on which it did not have discovery. See attached emails (2/25; 2/27; 3/19). Defendant has all documents, the contents of which are not disputed (other than the third party BCI deposition, where the witness found and provided crucial documents after the deposition).

<u>TU got the answers complained of in its memorandum.</u> The compound and overbroad question at Dep. p 7-8 was withdrawn, asked again and answered at p. 9. The misleading question at Dep. p. 10 was in fact answered at p. 10 – defendant had the credit denial documents so it knew that the assertion "so there is nothing else other than Best Buy; is that correct" was deceptive. (Despite the parties' agreement, plaintiff answered several questions about Best Buy at 25-27, repeating the earlier deposition.)

TU next complains about a comment (Def. Mem. at 5) which not only did not confuse or mislead the witness but was meant to be helpful to Mr. Creech. Defendant also complains that its damages questions were interrupted. In fact, they were answered several times over the course of the deposition, including at pages 9-10, 75-77. TU mentions its questions about a written denial by Chase (Def. Mem. at 7), which plaintiff answered at Dep. p. 35, 39.

<u>Privileged questions.</u> Defendant persisted in asking questions focusing on communications between counsel and client. Def. Mem. at 9-10. Defendant now claims the questions were other than about communications between counsel and client, but recasts them as whether plaintiff was aware of the content of her report before a dispute letter was written on her behalf. Plaintiff answered that question. Dep. at 62. (Defendant is well aware

3

that plaintiff struggled for several months to have her report corrected before hiring counsel to make a last-ditch effort to avoid suit.) Defendant complains that plaintiff did not answer whether she knew a dispute was made: she did, at Dep. p. 71. The undersigned understandably thought the questions were "Get Faulkner" questions, Dep. at 66, which seems to be borne out by the instant motion. Such questions are improper. Amhurst Leasing Corp. v. Emhart Corp., 65 F.R.D. 121, 126 (D. Conn. 1974). Privilege was properly asserted. Matter of Grand Jury Subpoenas, 959 F.2d 1158, 1166 (2d Cir. 1992).

## CONCLUSION

Defendant's motion should be denied for the reasons above stated. Moreover, Defendant committed a serious breach of the Fair Credit Reporting Act in connection with the deposition (see email of 2/5, attached). Instead of treating plaintiff's private credit reports with the confidentiality mandated by 15 U.S.C. § 1681b, it delivered the plaintiff's credit reports to the court reporter's office, which then forwarded them to the court reporter. Neither had a permissible purpose to receive plaintiff's credit reports. This breach could have been averted by sending the credit reports in a sealed envelope, or sending them to plaintiff's counsel. Defendant took neither sensible precaution. Because of this utter indifference to the defendant's FCRA obligations and the plaintiff's privacy, the intentional breach should preclude any further deposition.

                                                  THE PLAINTIFF

                                                  BY___/s/ Joanne S. Faulkner__
                                                JOANNE S. FAULKNER ct04137
                                                123 Avon Street
                                                New Haven, CT 06511
                                                (203) 772-0395

5

This is to certify that the foregoing was mailed on March 27, 2004, postage prepaid, to:

Bruce Luckman
Satzberg, Trichon, Kogan & Wertheimer, P.C.
1818 Market St  30th floor
Philadelphia PA 19103-3699

                  ___/s/ Joanne S. Faulkner___
                  Joanne S. Faulkner